1

2

3

4

5

6

7

8                          **IN THE UNITED STATES DISTRICT COURT**

9                          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIE CLYDE WEST,                              No.  2:17-CV-2076-JAM-DMC-P

12                 Petitioner,

13         v.                                        <u>FINDINGS AND RECOMMENDATIONS</u>

14   SPEARMAN,

15                 Respondent.

16

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition

19   for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 14, and Petitioner's

20   traverse, ECF No. 19.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

                                                 1

# I. BACKGROUND

A.   **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> In March 2014, defendant and the victim, D.S., were living together in Sacramento. The victim described the relationship as "friends with benefits."
>
> In December 2014, the victim, a friend (Rene M.), and defendant attempted to engage in a "threesome" but were unsuccessful because defendant could not get an erection. After dropping Rene off at her home, defendant became angry and emotional. During the drive home, he yelled at the victim and struck her in the face with the back of his hand, causing her nose to bleed. When they arrived home, defendant continued to yell at the victim. Defendant also hit the victim in the head with his fist, whipped her with a belt, and struck her with a shoe and a metal pole. During the attack, defendant repeatedly told the victim, "How dare you."
>
> After beating the victim for about an hour, defendant ordered the victim to remove her clothes. She removed her pants and defendant put baby oil on her vagina. Defendant then grabbed a screwdriver and inserted the handle into the victim's vagina. Defendant also inserted the handle of a hairbrush into her vagina. The victim cried and repeatedly begged defendant to stop. Defendant, however, did not stop; instead, he inserted his penis into the victim's vagina for about five minutes. He then resumed beating the victim. He also put the hairbrush, the screwdriver, and a remote control inside her mouth. Eventually, defendant left the bedroom and went into the living room. When he returned, he was carrying what appeared to be a metal pole that he used to beat her legs and shins, as she raised them in an attempt to block the blows. He then left the bedroom and returned again, this time with a knife. He straddled the victim and pointed the knife at her chest. He then demanded oral sex from the victim. In fear, the victim complied. (footnote omitted).
>
> Around 7:00 p.m., defendant went to work. Before leaving, he told the victim not to leave the apartment and threatened to "fuck [her] up" if she did. After defendant left, the victim met Rene M. at a nearby store. She told Rene that defendant had hit her and stuck things in her vagina. Rene took the victim to a friend's house to photograph her injuries. The victim then went back to her apartment and fell asleep.
>
> Defendant returned from work after 3:00 a.m. He woke the victim up and again said, "How dare you." He told her that she would be sleeping on the floor from now on, and then kicked and choked her. He also spit in her face. When defendant fell asleep, the victim went to Rene M.'s house and called the police.

---

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1

2

3

4

5

6

7

8

9

10

11

12

13

    The county sheriff's deputy who responded to Rene M.'s house observed bruises on the victim's legs, back, face, and head. The deputy also observed that the victim was visibly shaken and crying. Angela Rosas, M.D., of Sacramento's sexual assault response team conducted a sexual assault examination on the victim. She observed abrasions and/or bruises on the victim's shins, thighs, legs, arms, back, buttocks, head, jaw, and forehead. She also observed scratches and abrasions on the victim's neck consistent with strangulation. Dr. Rosas, however, did not find any signs of trauma to the victim's vagina or anus.

    Defendant was arrested and interviewed by a sheriff's detective at the county jail. During his interview, defendant acknowledged that he was embarrassed about the failed threesome, and admitted that he had slapped the victim after dropping Rene M. off at her house. He also admitted that he "whooped" the victim for about 10 minutes with a belt when they got home. He claimed that he had consensual sex with the victim and then went to sleep. Defendant stated that he woke up later and was still furious about the threesome. He said that he told the victim to "get on her fucking knees and suck [his] dick," and then went to sleep after she did so. Defendant admitted that he woke up a couple of hours later, around 3:00 a.m., and "whooped" the victim with two belts, slapped her, and "put the screwdriver in her." He also admitted to hitting the victim with a shoe and a "plastic" "stick thing," like a window "blind[s]" lever. Defendant, however, denied hitting her with a metal pole (as alleged in count four), or that he threatened the victim or used force during sex. He stated that the victim never said "no."

14

15

ECF No. 15-8, pgs. 3-5 (California Court of Appeal's opinion on direct review).

16

**B.**   <u>**Procedural History**</u>

17

    On April 8, 2015, the Sacramento County District Attorney filed a second-

18

amended information charging Petitioner with rape (Cal. Pen. Code, § 261, subd. (a)(2)) (count

19

1), assault with a deadly weapon, a knife (§ 245, subd. (a)(1)) (count 2), assault with a deadly

20

weapon, a belt (§ 245, subd. (a)(1)) (count 3), assault with a deadly weapon, a metal pole (§ 245,

21

subd. (a)(1)) (count 4), two counts of forcible oral copulation (§ 288a, subd. (c)(2)) (counts 5-6),

22

two counts of forcible penetration with a foreign object (§ 289, subd. (a)(1)) (counts 7-8),

23

corporal injury on a cohabitant (§ 273.5, subd. (a)) (count 9), and false imprisonment (§ 236)

24

(count 10).  <u>See</u> ECF No. 15-8, pg. 5.  The district attorney also included allegations that

25

Petitioner was previously convicted of, and had served a prior prison term for, inflicting corporal

26

injury on a spouse (§§ 273.5, subds. (a), (f)(1), 667.5, subd. (b)).  <u>See</u> <u>id.</u>  Petitioner pled not

27

guilty to the charges and denied the allegations.

28

/ / /

3

On April 15, 2015, the jury found Petitioner guilty of the charges in counts one, three, five, seven, nine, and ten.  See ECF No. 15-8, pgs. 5-6.  The jury found Petitioner not guilty of the charges in counts two, four, and six.  See id.  Count eight was dismissed after the jury was unable to reach a verdict.  See id.  Petitioner was sentenced to an aggregate term of 25 years in state prison.  See id. at 6.  The California Court of Appeal affirmed the conviction and sentence, see ECF No. 15-8, and the California Supreme Court denied direct review without comment or citation, see ECF No. 15-10.

Petitioner filed a post-conviction petition for a writ of habeas corpus in the Sacramento County Superior Court, which the court denied in a reasoned decision on March 30, 2016.  See ECF No. 15-12.  Petitioner then filed a habeas corpus petition in the California Court of Appeal, which was denied without comment or citation.  See ECF No. 15-14.  Finally, Petitioner filed a habeas corpus petition in the California Supreme Court, which was denied on September 13, 2017, without comment or citation.  See ECF No. 15-16.  The instant federal petition was filed on October 6, 2017.  See ECF No. 1.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in

1    federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where

2    state court had issued a ruling on the merits of a related claim, but not the claim alleged by

3    petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and

4    federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

5           Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

6    not available for any claim decided on the merits in state court proceedings unless the state court's

7    adjudication of the claim:

8           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
9           determined by the Supreme Court of the United States; or

10          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
11          State court proceeding.

12   Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

13   "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

14   standards, "clearly established law" means those holdings of the United States Supreme Court as

15   of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

16   (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the Supreme Court, not the

17   holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).

18   Supreme Court precedent is not clearly established law, and therefore federal habeas relief is

19   unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742, 753-54

20   (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal

21   law to be clearly established, the Supreme Court must provide a "categorical answer" to the

22   question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a state

23   court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

24   contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

25   created by state conduct at trial because the Court had never applied the test to spectators'

26   conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

27   holdings.  See Carey, 549 U.S. at 74.

28   / / /

5

1    In <u>Williams v. Taylor,</u> 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

2  majority of the Court), the United States Supreme Court explained these different standards. A

3  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

4  the Supreme Court on the same question of law, or if the state court decides the case differently

5  than the Supreme Court has on a set of materially indistinguishable facts. <u>See id.</u> at 405. A state

6  court decision is also "contrary to" established law if it applies a rule which contradicts the

7  governing law set forth in Supreme Court cases. <u>See id.</u> In sum, the petitioner must demonstrate

8  that Supreme Court precedent requires a contrary outcome because the state court applied the

9  wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court

10  cases to the facts of a particular case is not reviewed under the "contrary to" standard. <u>See id.</u> at

11  406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine

12  first whether it resulted in constitutional error. <u>See</u> <u>Benn v. Lambert,</u> 283 F.3d 1040, 1052 n.6

13  (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal

14  habeas relief is warranted. <u>See id.</u> If the error was not structural, the final question is whether the

15  error had a substantial and injurious effect on the verdict, or was harmless. <u>See id.</u>

16    State court decisions are reviewed under the far more deferential "unreasonable

17  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

18  unreasonably applies the rule to the facts of a particular case. <u>See</u> <u>Wiggins v. Smith,</u> 539 U.S.

19  510, 520 (2003). While declining to rule on the issue, the Supreme Court in <u>Williams,</u> suggested

20  that federal habeas relief may be available under this standard where the state court either

21  unreasonably extends a legal principle to a new context where it should not apply, or

22  unreasonably refuses to extend that principle to a new context where it should apply. <u>See</u>

23  <u>Williams,</u> 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court

24  decision is not an "unreasonable application of" controlling law simply because it is an erroneous

25  or incorrect application of federal law. <u>See id.</u> at 410; <u>see also</u> <u>Lockyer v. Andrade,</u> 538 U.S. 63,

26  75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even

27  where the federal habeas court concludes that the state court decision is clearly erroneous. <u>See</u>

28  <u>Lockyer,</u> 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper

6

1  deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75.

2  As with state court decisions which are "contrary to" established federal law, where a state court

3  decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

4  unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

5          The "unreasonable application of" standard also applies where the state court

6  denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

7  848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

8  are considered adjudications on the merits and are, therefore, entitled to deference under the

9  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

10  The federal habeas court assumes that state court applied the correct law and analyzes whether the

11  state court's summary denial was based on an objectively unreasonable application of that law.

12  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

13

14                          **III.  DISCUSSION**

15          Petitioner raises two related claims in his federal petition.  First, Petitioner

16  contends:

17          Alicia Hartley did nothing to stop my interrogation tape from being played
            to the jury in open court.  Defendant attorney Alicia Hartley didn't file a
18          motion to suppress this evidence of the redacted version of the
            interrogation tape.  When I asked her about it she told me that I didn't
19          have to worry about it one day then the next day said she was sorry the
            tape is being played.  I believe if the redacted tape was suppressed, I think
20          I would have been acquitted of all sexual assault charges.  The jury was
            skeptical of the prosecutor's assault.  Whatever doubts the jury had of
21          sexual assault it would have been eliminated by suppression of the
            redacted interview tape. . . .
22
            ECF No. 1, pg. 5.
23

24  Second, Petitioner claims:

25          Alicia Hartley didn't object to prosecutor Laura Froome not having the
            physical evidence at the motion of limine so that Alicia Hartley could
26          settle the issue of physical evidence before jury was allowed to see it,
            specifically the redacted version of the interview tape.  Alicia Hartley
27          never requested a (voir dire examination) to determine if the confession
            was voluntarily obtained in compliance with Miranda warning (Exhibit 41
28          was never even reported to the court as an exhibit) which was the redacted

1  interrogation tape and still Alicia Hartley never objected but was almost as
   if I didn't have a lawyer. . . .

2
   Id. at 7.

3

4      Both claims were first presented to the Sacramento County Superior Court on

5  post-conviction habeas review.  Petitioner's first claim was raised in the state court as his second

6  claim and presented as an alleged Miranda violation.  Petitioner's second claim was raised in the

7  state court as his first claim and presented as a claim of ineffective assistance of counsel.

8  Although Petitioner's first claim is now styled as an ineffective assistance of counsel claim, this

9  Court will analyze the claims consistent with the way the claims were presented to and discussed

10 by the state court.[2]

11     **A.**     ***Miranda***

12     The Fifth Amendment right against self-incrimination guarantees that any person

13 taken into custody shall be informed of his important constitutional rights and shall be given the

14 opportunity knowingly and voluntarily to waive those rights before being interrogated.  See

15 Miranda v. Arizona, 384 U.S. 436, 444 (1966).  However, "custody alone is not sufficient to

16 demonstrate involuntariness."  Medeiros v. Shimoda, 889 F.2d 819, 825 (1989) (citing United

17 States v. Watson, 423 U.S. 411, 424 (1976)).  "'The fundamental import of the [Fifth

18 Amendment] privilege while an individual is in custody is not whether he is allowed to talk to the

19 police without the benefit of warnings and counsel, but whether he can be interrogated.'"

20 Medeiros, 889 F.2d at 825 (quoting Miranda, 384 U.S. at 478).  Spontaneous statements not made

21 in response to questioning are therefore admissible.  See Oregon v. Elstad, 470 U.S. 298, 309, 318

22 (1985); Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980); Medeiros, 889 F.2d at 824-25;

23 United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981).

24 / / /

25 / / /

26 / / /

27

28           [2]     In any event, to the extent Petitioner's Miranda claim is considered as an
ineffective assistance of counsel claim, the claim is subsumed within his second claim.

8

1    In Miranda v. Arizona, the Supreme Court held that a suspect subject to custodial

2  interrogation must be informed in clear and unequivocal terms that he has the right to remain

3  silent.  Miranda, 384 U.S. at 467-68.  To protect the Fifth Amendment privilege against self-

4  incrimination, a suspect must also be informed of the right to consult with an attorney and to have

5  counsel present during questioning.  Id. at 469-73.  The police must explain this right to him

6  before questioning begins.  Id.

7    For a Miranda violation to occur, the defendant must be subject to a custodial

8  interrogation.  Interrogation requires "express questioning or its functional equivalent."  Rhode

9  Island v. Innis, 446 U.S. 291, 300-01 (1980).  The "functional equivalent" of interrogation

10  consists of statements or actions on the part of the police "that the police should know are

11  reasonably likely to elicit an incriminating response from the suspect."  United States v. Booth,

12  669 F.2d 1231, 1237 (9th Cir. 1981) (quoting Innis, 446 U.S. at 301).

13    To determine whether a person is "in custody" for Miranda purposes, "a court

14  must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is

15  simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree

16  associated with a formal arrest.'"  Stansbury v. California, 511 U.S. 318, 322-23 (1994) (quoting

17  California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)).  "[T]he only relevant inquiry is

18  how a reasonable man in the suspect's shoes would have understood his situation."  Id.  The

19  ultimate determination of whether a suspect was in custody is a mixed question of fact and law,

20  qualifying for independent review in federal habeas corpus proceedings.  Thompson v. Keohane,

21  116 S. Ct. 457, 465 (1995).

22    To prevail on his Miranda claim, Petitioner must demonstrate that his statements

23  were obtained by police interrogators in violation of the rules of custodial interrogation, that the

24  state trial court committed error in permitting the prosecution to use the product of the improper

25  interrogation, and that the error had a substantial and injurious effect or influence on the jury's

26  determination of its verdict.  See Pope v. Zenon, 69 F.3d 1018, 1020 (9th Cir. 1995).

27  / / /

28  / / /

1    In reviewing and denying Petitioner's <u>Miranda</u> claim, the state court held:

2    Petitioner's other claim is that his interview with Detective Clark should
     not have been admitted at trial because he was not given the proper
3    advisement under *Miranda v. Arizona* (1966) 384 U.S. 436. Again, a
     habeas corpus petition must be supported by reasonably available
4    documentary evidence or affidavits. (*In re Harris*, *supra*, at 827.)
     Petitioner concedes that the transcript from the interview states that he was
5    given the *Miranda* warning and stated that he understood them. He fails to
     attach any documentation whatsoever regarding the interview with
6    Detective Clark, much less evidence refuting the content of the written
     transcript. In addition, the interview in question was not the only
7    incriminating evidence presented at trial. Other evidence presented at trial
     included the victim's testimony, photographs corroborating her testimony,
8    and a transcript from a recorded jail call in which Petitioner admits to
     'whopping' the victim and beating her with a belt. Accordingly, it is
9    unlikely that suppression of the interview would have changed the result
     of the trial.

10   ECF No. 15-12, pg. 3.

11

12   In his answer, Respondent contends:

13           Rejection of this claim was reasonable for two reasons. First,
     Petitioner provided no evidence demonstrating that he was not advised of
14   his *Miranda* rights or that he did not knowing, voluntarily, and
     intelligently waive those rights. Petitioner admitted in state court that the
15   interview transcript reflected he received *Miranda* warnings and that he
     stated he understood them. (Lod. Doc. 11 at 4.) Nothing in the state court
16   record undermines this concession or otherwise shows that Petitioner's
     statements were obtained in violation of *Miranda*. And although he
17   asserted the full interview recording would show a violation, (Lod. Doc.
     11 at 4), he did not provide that recording or other evidence to that effect.
18   This claim is conclusory and wholly lacking in evidentiary support. It
     should be denied. *James v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995);
19   *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).
             Secondly, the state court reasonably found there was no prejudice
20   in any event. In the admitted portion of Petitioner's interview, he denied
     raping D.S. but acknowledged hitting her with belts and with his tennis
21   shoes. (Lod. Doc. 1 at 136-139.) This confession essentially duplicated his
     admission in an independently admitted jail recording that he "whooped"
22   the victim with a belt. (Lod. Doc. 1 at 134.) D.S., moreover, reported the
     assault to a friend, to the sexual assault examiner, and to the police. Her
23   testimony was largely consistent with these earlier reports and was
     corroborated by the physical evidence. (Lod. Doc. 3 at 42-80, 181-185,
24   238-239.) Any *Miranda* error did not have a "substantial and injurious
     effect or influence in determining the jury's verdict." *Brecht v.
25   Abrahamson*, 507 U.S. 619, 637 (1993). This claim fails.

26   ECF No. 14, pg. 10.

27   / / /

28   / / /

10

1    As discussed above, to establish a <u>Miranda</u> violation, at a minimum Petitioner

2  must show that the required warnings were not given prior to a custodial interrogation.  <u>See</u> <u>See</u>

3  <u>Pope</u>, 69 F.3d at 1020.  The state court made a key determination of fact on this point, noting:

4  "Petitioner concedes that the transcript from the interview states that he was given the *Miranda*

5  warning and stated that he understood them."  ECF No. 15-12, pg. 3.  Petitioner has offered

6  nothing in the instant federal petition, or in the state court petition for that matter, to rebut the

7  presumption that this factual determination is correct.  <u>See</u> <u>Runningeagle</u>, 686 F.3d 759 n.1.

8    Even assuming that Petitioner was able to overcome his admission that he was

9  provided <u>Miranda</u> warnings which he understood, Petitioner must still establish that admission of

10  the interrogation recording had a substantial and injurious effect or influence on the jury's

11  determination of its verdict.  <u>See</u> <u>Pope</u>, 69 F.3d at 1020.  This he cannot do.  As the state court

12  noted, there was significant other evidence upon which the jury could have based its verdict.  <u>See</u>

13  ECF No. 15-12, pg. 3.  Specifically, this evidence included the victim's testimony, photographs,

14  and the transcript from a recording of a phone call Petitioner made while in jail in which he

15  admitted to beating the victim with a belt.  <u>See</u> <u>id.</u>

16    This Court finds that the state court's determination of this claim was neither

17  contrary to nor based on an unreasonable application of controlling federal law.

18    **B.**    **Ineffective Assistance of Trial Counsel**

19    The Sixth Amendment guarantees the effective assistance of counsel.  The United

20  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

21  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all

22  the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>See</u>

23  <u>id.</u> at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have

24  been the result of reasonable professional judgment.  <u>See id.</u> at 690.  The federal court must then

25  determine whether, in light of all the circumstances, the identified acts or omissions were outside

26  the wide range of professional competent assistance.  <u>See id.</u>   In making this determination,

27  however, there is a strong presumption "that counsel's conduct was within the wide range of

28  reasonable assistance, and that he exercised acceptable professional judgment in all significant

11

1   decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S.

2   at 689).

3        Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

4   at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

5   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

6   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

7   see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

8   determine whether counsel's performance was deficient before examining the prejudice suffered

9   by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

10  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

11  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

12  697).

13       As to Petitioner's ineffective assistance of counsel claim, the state court applied

14  Strickland and held:

15       In this case, Petitioner contends that he received ineffective assistance of
         counsel because his trial attorney "did not object to the prosecutor Laura
16       Froome not having the evidence at the motion of limine hearing so the
         evidence could be argued and properly admitted in my trial."  Petitioner
17       does not explain why he believes it was necessary for the prosecutor to
         have the evidence physically present during the hearing. Furthermore,
18       with the exception of the police interview tape, which is discussed more
         fully below, he does not explain why the evidence was inadmissible.
19       Without showing that there were grounds to suppress the evidence, he
         cannot show that his trial attorney's purported failure to object to the
20       admission of certain evidence was inadequate or unreasonable.

21       ECF No. 15-12. Pg. 2.

22       Respondent argues:

23            As the state court reasonably found, Petitioner did not allege why
         counsel should have objected to either the prosecutor not producing the
24       physical evidence at the motions in limine or to the ultimate admission of
         that evidence at trial. Without identifying the grounds for an objection,
25       Petitioner's claim is conclusory and must be denied. Davis, 384 F.3d at
         650; Dows, 211 F.3d at 486-87; Gomez, 66 F.3d at 204; Borg, 24 F.3d at
26       26.
              There was, moreover, no apparent reason for counsel to object. In
27       California, physical evidence is admissible to substantiate or illustrate a
         witness's testimony. E.g., People v. Price, 1 Cal. 4th 324, 433 (1991). The
28       items Petitioner referred to in his state court pleadings consisted of

                                        12

1   physical household items that D.S. testified were used to assault or
2   sexually abuse her, a picture appellant took of D.S. during the assault, and
    Petitioner's statements about the assault. (Lod. Doc. 8 at 2-3; Lod. Doc. 3
3   at 48-51, 55-57, 61-62, 77, 211; Lod. Doc. 1 at 136-138.) Counsel could
    reasonably conclude the household items and the picture were plainly
4   admissible to illustrate or substantiate D.S.'s testimony and that any
    objection would have been futile. Similarly, for the reasons discussed
5   above in section I.A., counsel could reasonably conclude a *Miranda*
    objection to Petitioner's interview statements would also have been futile.
6   *Strickland* did not require counsel to raise meritless objections. *Borg*, 24
    F.3d at 27.
7           Additionally, there was no prejudice under *Strickland*. Because the
    state court only addressed the deficiency prong and did not reach the issue
8   of prejudice, this Court examines the prejudice component de novo. 28
    U.S.C. § 2254(a); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005). As
9   discussed above, the evidence against Petitioner was powerful even
    without the physical evidence. D.S.'s testimony was credible, was
10  consistent with her earlier reports of the crimes, and was corroborated.
    (Lod. Doc. 3 at 42-80, 181-185, 238-239.) Petitioner, moreover, admitted
11  in a recorded jail conversation and his police interview that he "whooped"
    the victim with a belt. (Lod. Doc. 1 at 131-139.) There was not a
12  reasonable probability of better outcome for Petitioner even had the
    physical evidence been excluded.

13          ECF No. 4, pgs. 13-14.

14          To the extent Petitioner complains about counsel's performance concerning

15  "physical evidence," under California law, the evidence at issue would have been admissible to

16  illustrate or substantiate witness testimony.  See Price, 1 Cal. 4th at 433.   Thus, as the state court

17  concluded, defense counsel's failure to raise an objection to physical evidence could not have

18  constituted deficient performance.  See ECF No. 15-12. Pg. 2.  To the extent Petitioner complains

19  about counsel's performance concerning the recorded interrogation, Plaintiff's claim also fails

20  because there was no Miranda violation and, thus, no reason for counsel to object.

21          This Court finds that the state court's determination of this claim was neither

22  contrary to nor based on an unreasonable application of controlling federal law.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 18, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14